UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:25-cv-00010-MR

| KHALIL JYWON DAVIS, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) ORDER |
| | ) |
| TURNER SOUTH, et al., | ) |
| | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e)(2); 1915A.

**I.    BACKGROUND**

Pro se Plaintiff Khalil Jywon Davis ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Marion Correctional Institution ("Marion") in Marion, North Carolina. On January 10, 2025, Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against the following Defendants: 1) Turner South, Programs Director at Marion; 2) Ben Carver, Marion Warden; 3) Cindy Haynes, Marion Assistant Warden of Programs; and 4) Latisha Pruden, identified as "RDU Administration" in Elizabeth City, North Carolina. [Doc. 1 at 1, 3-4]. Plaintiff sues Defendants in their individual and official

capacities. [Id. at 3-4]. Plaintiff alleges as follows.

On January 11, 2024, Plaintiff was transferred from county jail to North Carolina Department of Adult Correction (NCDAC) custody and "placed on control to be observed" for months.[1] [Id. at 6]. Despite having no infractions while on control status and "proving … [he] could function without trouble," Plaintiff was transferred to the Rehabilitative Diversion Unit (RDU) at Marion "without reason." [Id. at 5-6]. The RDU is a 13-month program consisting of multiple stages through which a prisoner must progress before being returned to regular population. [Id. at 5]. "They were notified and aware that [Plaintiff] wasn't supposed to be [in RDU] and did nothing to rectify the matter." [Id. at 6]. Plaintiff has been "kidnapped and tortured, forced to sit in wait for months over the required time of phase completions." [Id. at 8]. After 12 months in RDU, despite being infraction free, Plaintiff has advanced only to phase 2 part 1, which should have taken him six (6) months. [Id. at 5].

In RDU, Plaintiff is denied phone and canteen privileges, required to conduct visits with family members and other visitors behind glass and shackled behind his back, limited to recreation time in an empty room, and

---

[1] Because of potential inconsistencies in Plaintiff's allegations regarding his time in RDU, the Court consulted the NCDAC inmate locator website. It shows that Plaintiff was convicted of second-degree murder on September 28, 2023, and admitted to NCDAC custody on October 2, 2023, at Central Prison. Plaintiff was last moved in July 2024 and, as he alleges, is currently incarcerated at Marion.

2

restrained in all movements outside his cell. [Id. at 5, 8]. The light in Plaintiff's room remains on for 18 hours per day and he is not provided proper cleaning implements for his toilet. [Id. at 9]. The RDU program "[has] been deemed as unfit" and "they've been told by officials they have to change it[.]" [Id. at 6]. He has been provided no timeline for completion of the RDU program and release to regular population. [Id. at 8].

While in RDU, Plaintiff "fit all the criterias [*sic*]" to get married and was scheduled to do so. Defendant Carver, however, withheld approval and "placed the situation on hold." [Doc. 1 at 6]. "SRG officers all of a sudden upped [Plaintiff's] level out of nowhere" and removed Plaintiff's spouse from the visitation list.[2] [Id. at 6]. After Plaintiff and his "then fiancee [*sic*]" inquired with the Special Operations and Intelligence Unit, it was determined that the SRG level increase was done in error. [Id.].

Plaintiff told Defendant Priden that he was being mistreated and that RDU "was mentally destroying [him]." [Id. at 7]. Defendant Priden was also made aware of the SRG-level error and "did nothing." [Id. at 7]. Plaintiff wrote to Defendant South, who oversees the RDU program, and begged multiple times to be released. Defendant South replied that Plaintiff was

---

[2] Although not specifically alleged by Plaintiff, it appears that the wedding eventually occurred.

placed in RDU "for whatever [Plaintiff] did at the prison [he] was at before [Marion]." [Id. at 7]. Plaintiff alleges, however, that he did nothing there. [Id.]. After speaking with Defendant Turner in person about the situation, Plaintiff provided Turner a letter from program supervisor Amy Lafluer in which she advised that Plaintiff was a safety risk and needed to be observed before released around other inmates and staff. [Id. at 7]. Plaintiff also notified Defendant Haynes about "all these matters [and] she did absolutely nothing[.]" [Id. at 7]. Haynes "is enormously apart of the reason" Plaintiff is still in RDU. [Id. at 7]. She encouraged Plaintiff to use his time wisely and to fully participate in the program, but "they barely do any class" and there is "no form of participation [that] can be done when you're locked behind a door 24 hours a day." [Id. at 7].

Plaintiff claims violation of his Eighth Amendment rights and wrongful imprisonment. [Id. at 5]. For injuries, Plaintiff alleges that he and his family have suffered various mental and emotional injuries due to his RDU placement and that he has suffered physical pain in his neck and shoulders from being handcuffed behind his back.[3] [Id. at 10]. Plaintiff seeks monetary relief only. [Id. at 11].

---

[3] Plaintiff is admonished that he cannot recover damages based on injury allegedly suffered by his family members.

4

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023).

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Extreme deprivations are required, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992). The plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.3d 1375, 1381 (4th Cir.1993).

A reviewing court "owe[s] 'substantial deference to the professional judgment of prison administrators.'" Beard v. Banks, 548 U.S. 521, 528

(2006) (quoting Overton v. Bazzetta, 539 U.S. 126, 132 (2003)). "[R]estrictive prison regulations are permissible if they are 'reasonably related to legitimate penological [objectives],' and are not an 'exaggerated response' to such objectives." Id. (quotations omitted) (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)). The length of time Plaintiff was subjected to the harsh conditions is an important factor in analyzing whether his constitutional rights were violated. See Beverati v. Smith, 120 F.3d 500, 504 (4th Cir.1997).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, he has failed to state a claim for relief based on his conditions of confinement. Plaintiff alleges that he has been in the RDU program at Marion for 12 months and that he has advanced to phase 2, part 1 of the program. While Plaintiff may not have committed infractions causing his initial or continued placement in RDU, he concedes his placement there is a result of concerns over the safety of other inmates and prison staff. Moreover, while Plaintiff's advancement through the phases of the program is taking longer than desired and expected, he is in fact advancing through the program. While the alleged conditions are certainly undesirable and uncomfortable, they are not sufficiently extreme to be constitutionally redressable and the Court must defer to the judgment of prison officials under these circumstances. See Beard, 548 U.S. at 528; Orr v. Cothron, No.

7

1:24-cv-00160-MR, 2024 WL 4031046 (W.D.N.C. Sept. 3, 2024) (dismissing prisoner plaintiff's conditions of confinement claim based on RDU placement on initial review); Pearson v. Barker, 1:23-cv-00296-MR, 2024 WL 172571 (Jan. 16, 2024) (same). See also Kimble v. Swink, No. 22-6437, 2024 WL 688105 (4th Cir. Feb. 20, 2024) (affirming dismissal of prisoner plaintiff's Fourteenth Amendment claim alleging placement in RDU without due process). The Court, therefore, will dismiss this claim.

Plaintiff's official capacity claims also fails initial review. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, as noted the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, Plaintiff's official capacity claim fails as a matter of law.

8

Case 1:25-cv-00010-MR    Document 8    Filed 01/24/25    Page 8 of 10

The Court will also dismiss Plaintiff purported state law claim for wrongful imprisonment because his constitutional claim fails, and the Court lacks supplemental jurisdiction. See 28 U.S.C. § 1367.

Because Plaintiff has failed to state a claim for relief, Plaintiff's Complaint fails initial review, and the Court will dismiss it without prejudice. The Court, however, will allow Plaintiff to amend his Complaint to state a claim for relief.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's Complaint fails initial review and will be dismissed without prejudice. The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to properly state a claim upon which relief can be granted in accordance with the terms of this Order. Any amended complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the Court will dismiss this action without prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Complaint fails initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B) for Plaintiff's

failure to state a claim for relief and shall be **DISMISSED WITHOUT PREJUDICE** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Plaintiff shall have thirty (30) days in which to amend his Complaint in accordance with the terms of this Order. If Plaintiff fails to so amend his Complaint, the matter will be dismissed without prejudice.

The Clerk is respectfully instructed to mail Plaintiff a blank prisoner § 1983 form.

**IT IS SO ORDERED**.

Signed: January 23, 2025

Martin Reidinger
Chief United States District Judge